**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 2:17CR138 |
| Plaintiff, | : | |
| | : | JUDGE GRAHAM |
| vs. | : | |
| | : | |
| BERND D. APPLEBY, | : | **Motion For Compassionate Release** |
| Defendant. | : | |

The Defendant, Bernd D. Appleby, through undersigned counsel, respectfully moves this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and reduce his sentence to time served (or in the alternative to time served with a period of home confinement). As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. The growing coronavirus pandemic, which public health experts and policymakers recognize is especially dangerous in the confines of correctional institutions, particularly the dire situation at FCI Lompoc, is an extraordinary and compelling circumstance. Because of his age and his underlying health concerns, Mr. Appleby is among those at highest risk of death or serious illness if he is exposed to the disease. This risk, combined with the totality of the circumstances, warrants an immediate sentence reduction to time served.

Per the Court's Order of May 7, 2020, undersigned counsel investigated whether the authorities at the Bureau of Prisons ("BOP") are considering Mr. Appleby for home confinement. With respect to the CARES Act, the Regional Counsel for the Western Region of BOP stated: "We are considering all inmates under the CARES Act…[but]….Due to the volume of reviews, we are not informing inmates if they are not found suitable, or if staff are working on other inmates first."

Under the pilot program, he appears to be eligible in October but because of the dire situation at Lompoc and the Defendant's vulnerability, that is far too long to wait.

## STATUTORY FRAMEWORK FOR SENTENCE REDUCTION AUTHORITY UNDER 18 U.S.C. § 3582(C)(1)(A)(I)

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; . . .

*****

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

2

## RELEVANT FACTS AND PROCEDURAL HISTORY

On April 15, 2018, Appleby was sentenced to 24 months in prison upon his plea of guilty to Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.

Mr. Appleby has been in custody in connection with the present offenses since June 4, 2019, which amounts to over a year of actual incarceration and more than 50% of the sentence imposed. It is fair to say that the time spent during the pandemic at issue in this Motion has been harder than what would typically have been expected; for example, family visits have been disallowed and severe limitations have been placed on otherwise routine aspects of prison life including the ability to make phone calls or prepare correspondence. Since arriving at Lompoc, Mr. Appleby's wife sustained two accidents requiring surgery while also being the sole caretaker for their nephew.

Appleby submitted a request for compassionate release on April 9, 2020, to the Acting Warden von Blanckensee at FCC Lompoc. The request was denied on April 13, 2020, by way of a form letter. Oddly enough, that form letter outlined the types of circumstances that present "extraordinary or compelling reasons" including "an elderly inmate with medical conditions," "other elderly inmate" and "new law elderly inmate." It is unclear how a 68-year old with a heart condition and high cholesterol does not fit into one of those categories, especially in light of the release granted to other high-profile inmates who had served nowhere near half their sentences. *See* https://www.nytimes.com/2020/05/13/us/politics/paul-manafort-released-coronavirus.html https://www.cleveland.com/court-justice/2020/05/corrupt-former-cuyahoga-county-auditor-frank-russo-released-from-federal-prison-amid-coronavirus-pandemic.html.

Nevertheless, in light of this Court's ruling in *U.S. v. Dougherty*, Case No. 2:18-cr-229 (April 20, 2020), regarding the request being specifically tied to the Covid crisis, Appleby filed

another request on May 5, 2020 in an abundance of caution. That request was denied on May 8, 2020.

## ARGUMENT

**The Court Has Authority to Consider Appleby's Motion Because More than Thirty Days Have Elapsed Since the Request Was Received by the Warden.**

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the BOP, Congress expanded the statute in the First Step Act of 2018. Pub. L. 115-391 § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

The reason for the expansion to include defense-filed motions was the "documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the exclusive channel through which a sentence reduction could be considered by courts." *Id.* In this case, the timing provision has been satisfied. Mr. Appleby submitted a request for reduction in sentence to the warden of his facility on April 9 and again on May 5, more than 30 days ago, providing the basis for the Court to consider this motion. This motion is ripe for review on the merits. *See United States v. Alam*, (No-1298, 6th Cir. June 2, 2020)("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to

them."); *United States v. Woodson*, No. 13-20180 (S.D.Fl. June 5, 2020)(noting that the official position of the Department of Justice that the lapse of 30 days controls and independently analyzing the statute to so provide); *see also United States v. Guzman Soto*, No. 18-10086, 2020 WL 1905323 (D. Mass. April 17, 2020) ("The government's contention that if the warden denies Defendant's request, [the defendant] is then required to fully exhaust all administrative remedies before the court has authority to consider his request, ignores the plain language of the statute." )

**Appleby's Vulnerability to COVID-19 Is an Extraordinary and Compelling Reason for an Immediate Sentence Reduction to Time Served.**

The compassionate release statute does not expressly define or limit what constitutes an "extraordinary and compelling" reason for a sentence reduction. Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," BLACK'S LAW DICTIONARY (10th ed. 2014). Its definition of "compelling need," is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]." *Id*. The present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes. The grave risk to Mr. Appleby from continued incarceration provides a compelling reason for his immediate release.

**The Court Has Authority to Find Extraordinary and Compelling Reasons Other than Those Expressly Identified in Commentary to U.S.S.G. § 1B1.13.**

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority, U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" only in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced

age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). The commentary also includes a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the BOP. U.S.S.G. § 1B1.13, comment. n. 1(D).

However, the policy statement was last amended in November 2018, before the First Step Act was passed, and it still requires a motion filed by the BOP. For that reason, "a growing number of district courts have concluded the Commission lacks" a policy statement applicable to the post-First Step Act statute. *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020); *see also United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (citing cases). In *United States v. Cantu*, the court explained:

> Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582.

No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019). Similarly, in *Redd*, the court noted that § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants." 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). Therefore, the court concluded, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *Id*.

In *Redd*, the court explained that "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance." 2020 WL 1248493, at *7 (citing cases); *see also United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that

6

the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

The government conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." No. 2:00-CR-00002-1, 2020 WL 1047815, at *2 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed the majority of district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. at *6.[1]

Accordingly, this Court has authority to consider whether the worsening global pandemic, combined with the other relevant circumstances in this case, present an extraordinary and compelling basis for a sentence reduction, regardless of whether it falls within one of the existing categories in § 1B1.13 commentary.

---

[1] *See also United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *2-3 ("[A] majority of district courts to consider the question have embraced Mr. Maumau's position" that limiting the catch-all provision to circumstances identified by the BOP is inconsistent with the law") (citing ten other cases); *Brown*, 411 F. Supp. 3d at 451 ("[I]f the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive." (internal quotation marks and citations omitted)); *United States v. Owens*, No. 97-CR-2546-CAB, ECF No. 93 at 4 (S.D. Cal. Mar. 20, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence — and may do so under the 'catch all' provision similar to that recognized in U.S.S.G. Manual § 1B1.13 n.1(D), that is, 'an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)' relating to prisoner health or family relations." (citation and internal quotation marks omitted)); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) ("However, under subsection (D) of the note, the Court may also consider other 'extraordinary and compelling reasons' not specifically articulated.")

7

**COVID-19 Is an Unprecedented and Rapidly-Expanding Global Health Emergency that Presents a Serious Risk to Vulnerable Prisoners.**

On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus which causes COVID-19 as a pandemic. WHO Characterizes COVID-19 as a Pandemic, World Health Organization (Mar. 11, 2020), https://bit.ly/2W8dwpS.

COVID-19 has now infected more than 7,976,686 people worldwide, leading to more than 434,848 deaths including over 116,081 deaths in the United State alone. Coronavirus COVID-19 Global Cases, Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, https://coronavirus.jhu.edu/map.html.

Conditions of imprisonment create the ideal environment for the transmission of contagious diseases. Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases, 1047-1055 (Oct. 2007), https://doi.org/10.1086/521910. "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." Centers for Disease Control and Prevention (CDC), Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The CDC recognizes the difficulty of preventing the introduction of COVID-19 into prison facilities:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

*Id*.

COVID-19 has made inroads in the BOP, with the facility at Lompoc leading the way. At one point, 80% of the inmates tested positive and FCI Lompoc (along with Terminal Island) accounted for 47% of all federal inmates who had tested positive nationwide. The two combined facilities at Lompoc had 895 infected inmates and at least four have since died. https://www.latimes.com/california/story/2020-05-09/coronavirus-cases-lompoc-federal-prison-inmates; https://www.edhat.com/news/fourth-inmate-dies-at-lompoc-prison-of-covid-19.

This has led to a Senate inquiry and a class action lawsuit. *See* https://www.independent.com/2020/06/02/senators-demand-answers-as-another-lompoc-inmate-dies-of-covid/https://calcoastnews.com/2020/05/class-action-lawsuit-filed-against-lompoc-prison. Some recent reporting suggests primitive and unsanitary conditions. *See* https://www.independent.com/2020/06/08/22-days-in-lompoc-prisons-covid-19-hellhole/.

**Appleby Runs a High Risk of Serious Illness or Death if He Contracts COVID-19.**

The CDC and other medical authorities have made clear that COVID-19 is especially dangerous for both older people and people with severe chronic medical conditions. *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html. Eight out ten deaths reported in the United States have been in older adults. *Id.*

Mr. Appleby is 68 years old and takes medication for a heart condition and high cholesterol (undersigned counsel has obtained Mr. Appleby's medical records from Lompoc which substantiate this). As such, he is among those with the highest risk of death or serious illness from COVID-19. Yet, as a BOP inmate, especially at Lompoc, it is impossible for Mr. Appleby to follow the CDC's recommendations to protect himself from exposure to this highly transmissible disease. He is confined to a dormitory where four inmates share 98 sq. ft. of living space. This risk of

9

serious illness or death from the unprecedented global pandemic, together with all of the other relevant factors in this case, presents an extraordinary and compelling basis for sentence reduction.

**Courts Responding to the Coronavirus Pandemic Have Recognized the Critical Importance of Reducing Incarcerated Populations.**

The response to COVID-19 reflects the extreme exigency of the present circumstances, especially for those individuals most vulnerable to harm from the virus.

In *United States v. Copeland*, No. 2:05-cr-00135-DCN (D.S.C. Mar. 24, 2020), the Court granted a sentence reduction to time served under another portion of the First Step Act to a defendant serving a life sentence for a drug trafficking conspiracy and firearm possession. The court recognized that the defendant's "tenuous health condition" put him at "even higher risk for severe illness and possible death" from the COVID-19 pandemic. The court considered letters from members of Congress as evidence of its "desire for courts to 'use all available powers and authorities . . . to reduce the number of federal prisoners in . . . prisons,'" especially for elderly and sick individuals and those within the last 36 months of their sentences who are appropriate for placement in home confinement. Id. at ** (quoting Letter of House Judiciary Committee, Mar. 19, 2020).

A sampling of the court orders granting release based on the pandemic fails to convey the full volume of building precedent. *See, e.g.*, *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481 (E.D. Mich. Mar. 27, 2020) ("[T]he danger posed to Defendant in the Saginaw County Jail by the COVID-19 pandemic constitutes an independent compelling reason to temporarily release him from custody."); *United States v. Michaels*, 8:16-cr-76-JVS (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)"); *United*

10

*States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __ F. Supp. 3d __ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Grobman*, No. 18-cr-20989, ECF 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted of fraud in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); *see also United States v. Avenatti*, No. 8:19-cr-61 (C.D. Cal. Mar. 25, 2020) (*sua sponte* inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the COVID-19 pandemic"); *Wise v. United States*, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[J]ust last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); *United States v. Wright*, No. CR TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) ("The Government now agrees, based on recent Department of Justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute "extraordinary and compelling reasons" under the circumstances of the COVID-19 pandemic."); *United States v. Atkinson*, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) ("The presence of COVID-19 . . .

necessitates a more expansive interpretation of what self-care means" to include Covid-vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission).

### The Relevant § 3553(a) Sentencing Factors Warrant Reducing Appleby's Sentence to Time Served

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Appleby's advanced age, compromised physical health, and the unique danger he faces of contracting COVID-19 and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

First, Mr. Appleby's case involved Conspiracy to Commit Wire Fraud in the course of his business dealings. Thus, while Mr. Appleby's offense conduct was certainly serious, it involved neither weapons nor allegations of violence. The case involved an institutional victim that continued to operate successfully.

Second, Mr. Appleby had no prior criminal history and the conduct at issue was aberrant behavior in the course of an otherwise clean pattern of living.

Third, Because of his age and the circumstances at home, the risk of recidivism is virtually nonexistent.

In this case, granting compassionate release would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the

heightened risks faced by Mr. Appleby at FCI Lompoc, whose ability to engage in basic self-protective measures is restricted—warrant compassionate release. Because Mr. Appleby has been incarcerated for over 12 months (more than 50% of his 24-month sentence), which is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a), Mr. Appleby seeks an order reducing his sentence to time served.  To the extent the Court has any remaining concerns about outright release, the Court could modify some portion of any remaining supervised release term to include a condition of home confinement, rather than denying this Motion.  *See* 18 U.S.C. § 3553(a)(3)(requiring consideration of "the kinds of sentences available").

Mr. Appleby has a Minimum pattern score at Lompoc and a release plan to ensure his safe transition to the community. Mr. Appleby can be picked up within 4 hours of release and reside with his wife and nephew (whom he has written about in previous filings and requires care from both Mrs. and Mr. Appleby). He has access to medical insurance and his home has a dedicated telephone line in place, if needed.

Respectfully submitted,

/s/Justin J. Roberts
Justin J. Roberts
Ohio Bar: 0086168
J. Roberts, LLC
Fifth Third Building, Suite 1300
600 Superior Avenue
Cleveland, OH 44114
(216) 417-2114
E-mail: justin.roberts@jrobertslegal.com
(Counsel for Defendant Bernd D. Appleby)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2020, a copy of the foregoing Motion for Compassionate Release was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/Justin J. Roberts
Justin J. Roberts (#0086168)
J. Roberts, LLC
